[Civ. No. 23883. Fourth Dist., Div. Two. Oct. 20, 1981.]

LINTON T. SIMMONS et al., Plaintiffs and Appellants, v.
CALIFORNIA COASTAL COMMISSION, Defendant and
Respondent;
LARRY PELTIER et al., Real Parties in Interest and Respondents.

COUNSEL

Beardsley, Hufstedler & Kemble, Hufstedler, Miller, Carlson & Beardsley, Dennis M. Perluss and Robert S. Thompson for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher and Richard T. McCoy for Real Parties in Interest and Respondents.

No appearance for Defendant and Respondent.

OPINION

McDANIEL, J.—The appeal here is from an order after judgment following the moving party's resort to section 1058a of the Code of Civil Procedure. That section, according to Witkin, "was enacted in 1973 to give the beneficiary of a bond or undertaking . . . a summary remedy against the surety by motion in the main action. . . . The statute, similar to C.C.P. 535, authorizing such a motion against the surety on an injunction bond . . . provides [in substance] as follows:

"(1) *Submission to Jurisdiction.* '[E]ach surety submits himself to the jurisdiction of the court in all matters affecting his liability on the bond or undertaking' . . . .

"(2) *Motion After Judgment Final.* The motion cannot be filed until entry of final judgment and expiration of the time for appeal. The notice of motion must state the amount of the claim, and must be supported by affidavit or affidavits which conform to the standards for affidavits on summary judgment . . . .

"(3) *Summary Determination if No Opposition.* 'Judgment may be entered in accordance with the notice' unless the surety opposes.

"(4) *Opposition by Surety.* The surety must serve and file an affidavit or affidavits showing facts which the judge deems sufficient to

present a triable issue of fact. These affidavits must also conform to summary judgment standards.

"(5) *Trial of Issues.* If the requisite showing is made the judge specifies the issue to be tried, and sets a time for trial at 'the earliest date convenient to the court, allowing sufficient time for discovery.'

"(6) *No Stay.* 'The surety shall not obtain a stay of the proceedings pending the determination of any third-party claims.'" (2 Witkin, Cal. Procedure (1981 supp.) Provisional Remedies, § 3A, pp. 195-196.)

The main action has been the subject of an appeal before this court in another phase of the case. Plaintiffs-appellants here were petitioners in an administrative mandamus proceeding to challenge certain orders of the California Coastal Commission which permit construction of a three-unit condominium near the ocean in San Clemente.

Early on, in the course of the superior court proceeding, the petitioners obtained on June 7, 1978, an order which operated to stay the construction noted until the case was prosecuted to judgment. In connection therewith, petitioners soon thereafter, on June 30, 1978, were required as a condition of continuing the stay in effect, to post a $30,000 surety bond as indemnity against any damages which real parties "may suffer as a result of such stay in the event that Petitioners do not ultimately prevail in their action." The bond was posted.

The case was tried in the summer of 1978 and resulted in a judgment for real parties and expiration of the stay order. However, on motion of petitioners, the stay order was extended for 10 days after entry of judgment. Within that extension, petitioners filed their notice of appeal. The effect of the filing of the notice of appeal was to extend the stay to October 26, 1978. Petitioners' application to this court for supersedeas beyond October 26, 1978, was unavailing, and a petition for hearing to review our order to refuse supersedeas was denied by the Supreme Court on December 20, 1978.

The appeal was unsuccessful, and a petition for hearing to challenge our decision was likewise denied by the Supreme Court.

As a consequence of these procedural events, the period of the unbonded stay extended from June 7, 1978, to June 30, 1978, and the

period of the bonded stay extended from June 30, 1978, until at least December 20, 1978, the date upon which the Supreme Court denied a petition for hearing on our denial of supersedeas in the main action.[1]

After real parties' successful defense of petitioners' challenge to the California Coastal Commission order, the former moved in the main action, under section 1058a of the Code of Civil Procedure, to realize on the $30,000 surety bond issued by Highlands Insurance Company of Houston, Texas, and filed by petitioners as indemnity for any damages real parties might suffer as a consequence of the stay of construction of the condominium.

In support of their motion, real parties filed a memorandum of points and authorities and six supporting declarations. Based upon data in the declarations, real parties have compiled a table of estimated damages as follows:

| | | Assuming Effect of the Stay lasted until: | |
|---|---|---|---|
| | | 10/26/78 | 12/20/78 |
| (1) | Increased construction costs | $ 7,192 | $14,384 |
| (2) | Increased interest on a 1-year construction loan | 4,908 | 9,115 |
| (3) | Present value of increased int. costs on a 30-yr. take-out loan | 22,437 | 41,672 |
| (4) | Atty's fees in defeating stay | 16,500 | 16,500 |
| (5) | Additional city fees | 5,333 | 5,333 |
| (6) | Loss of use of inv. cap. (assum. 7 percent return on cap.) | 2,007 | 3,011 |
| (7) | Comp. with new energy reg. | 1,600 | 1,600 |
| | TOTAL | $59,977 | $91,615 |

In opposition, the petitioners filed, along with points and authorities, the declaration of Joseph L. Wyatt, Jr., one of the petitioners. According to petitioners, the thrust of the opposing declaration imported five factual contentions: (1) that all conditions to be met by real parties for

---

[1]As respondents here and real parties below point out, "In the event of attempted construction by Real Parties, the Court of Appeal and/or the California Supreme Court, almost certainly would have issued a temporary continuance of the stay pending the determination of Petitioners' Petition for Supersedeas. Thus, the stay was in reality in effect until December 20, 1978."

obtaining a permit from the coastal commission had not been met by June of 1978; (2) that new and higher "city fees" of $5,333 were not incurred because of the stay; (3) that $16,500 incurred in attorney's fees were for services not related to the main action; (4) that the increase in loan fees faced by real parties was and is the result of delays which real parties caused themselves for their own reasons; and (5) that none of the claimed damages were recoverable for the reason that construction had not begun.

As a result of this motion, the task before the trial court was to apply the provisions of section 1058a of the Code of Civil Procedure to the declarations filed both in support of and in opposition to the motion. After hearing oral argument for and against the motion, the court took the matter under submission. About a week later, by minute order, the court ruled, "Real Parties are awarded the full amount of the undertaking."

Petitioners then, contrary to the theory that they have urged on appeal, made a request for findings.[2] Findings were proposed, objected to, and finally settled and filed. A formal written judgment in favor of real parties and against the surety for $30,000, the face amount of the bond, was then filed. This appeal followed.

### DISCUSSION

The only issue on appeal is whether the trial court rightly granted the motion of real parties under section 1058a of the Code of Civil Procedure with reference to the several declarations filed in support of and in opposition to the motion to realize on the bond of the surety. The key operative language of the statute, to reiterate, is, "Judgment may be entered in accordance with the notice against the person or persons served therewith, unless such person or persons shall serve and file an affidavit or affidavits in opposition to the motion showing such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact. If such showing is made, the issues to be tried shall be specified by the court and trial thereof shall be set for the earliest date convenient for the court, allowing sufficient time for discovery."

---

[2]In their reply brief petitioners state, "The central question in this case is how broad is the discretion of the trial court in deciding a motion to enforce the liability of a surety brought under C.C.P. § 1058a. The answer to that question is: only broad enough to determine whether there exists any triable issue of fact." Such a theory, if pursued in the trial court, could *not* have involved a request for findings.

Petitioners' grievance on appeal lies in their perception that the declaration of Mr. Wyatt did operate to present issues of fact, but that the trial court nevertheless went ahead to resolve those issues of fact, whereas it should have set those issues down for formal trial. On the face of it, this perception appears to be accurate; the very presence of findings would seem to confirm that this is precisely what the trial court did, i.e., it resolved issues of fact rather than framing such issues and setting the matter down for trial.

The response by real parties to this basic contention of petitioners, in effect, is to argue that there really were no triable issues of fact presented as a consequence of the Wyatt declaration. In making this contention, real parties do not squarely answer the basic contention of petitioners that the court undertook to resolve issues of fact.

We turn first to petitioners' contention that the statute has been improperly applied. In our view, as a matter of statutory interpretation, it does not require any extended citation of the legislative history or any marshalling of arguments by analogy to fathom the meaning of the statutory language above quoted. In this, we agree with petitioners that the role of the trial court under section 1058a of the Code of Civil Procedure is no different from the court's role in hearing motions for summary judgment under section 437c of the Code of Civil Procedure. The authorities defining that role are abundant, and no citation of that authority is necessary to characterize such role. In section 437c cases, if the supporting declarations make a prima facie case to support a judgment, then the court must grant the motion unless the opposing declarations present a triable issue of fact. In such latter event, the court must deny the motion and set the case down for trial.

This is also the clear import of the language of the statute here under consideration. Aside from the plain language of the operative portion of the statute, the supplemental requirement that the affidavits filed shall conform to the standards prescribed for affidavits submitted pursuant to section 437c of the Code of Civil Procedure lends further confirmation to the obvious interpretation which the statutory language compels us to reach.

As a consequence, we agree with petitioners that the record demonstrates a failure to apply the statute as it should have been. However, that does not mean that the trial court reached the wrong result in granting real parties' motion ■ As observed in *D'Amico* v. *Board of*

*Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10], "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Id.* at p. 19.)

In other words, as a matter of appellate review, our task is to determine, if the statute had been correctly applied, whether the supporting declarations were sufficient to support the judgment and, if so, whether the opposing declaration in turn operated to raise a triable issue of fact. From our review of the record, it is clear that the real parties' declarations were adequate to support the judgment and that the declaration of Mr. Wyatt did not operate to raise any triable issues of fact.

We reach this conclusion, for the ultimate issue was whether real parties were entitled to *$30,000*, not $91,615 or even $59,977.

On the real parties' side of the ledger, there is no question but what the declarations filed in support of their motion made a prima facie case to support a judgment for $91,615, based on a stay lasting until December 20, 1978. Such a conclusion is contrary to a contention urged by petitioners, both in their briefs and at oral argument. They contend that the filings in support of the motion do not make out a prima facie case of damages suffered by the real parties because no causation has been definitively shown. They cite *Maxwell* v. *Colburn* (1980) 105 Cal.App.3d 180 [163 Cal.Rptr. 912], for the proposition that the presence of conflicting inferences must be taken into account in testing both whether a prima facie case to support a judgment has been made and whether any issues of fact are presented for resolution as a result of opposition filings.

We have no quarrel with the proposition noted or with *Maxwell*; however, it is our view that neither is applicable to this case. With reference only to increased costs of construction, increased loan fees, and increased interest costs on a 30-year take out loan, traceable to delays in construction up to December 20, 1978, a fair reading of the supporting declarations yields readily recognizable damages aggregating $65,171.

These figures, without ambiguity or the presence of conflicting inferences, show what the delay in construction cost the real parties. However, petitioners argue further that the delay was not caused by the stay but by the failure of the real parties to meet certain extrinsic conditions which had to be met before construction could legally commence. We are satisfied that these conditions were not significant and that the filings in support of the motion demonstrate, had the real parties not been stayed by court order, that these conditions would have been met soon after the date the stay was imposed. In sum, the real parties, well within established authorities in summary judgment cases, including *Maxwell*, did make out a thorough and convincing case on the facts contained in their filings showing entitlement to the damage figure claimed.

Final resolution of the case therefore centers on the effect of Mr. Wyatt's declaration. Fairly analyzed, that declaration attacks the factual showing of real parties on three salients. They are: (1) the additional city fees of $5,333; (2) attorney's fees incurred in defeating the stay amounting to $16,500; and (3) increases in loan fees.

Starting even with the lesser denomination of $59,977 damages, if the trial court had conceded Mr. Wyatt's position, i.e., accepted that a triable issue of fact had been properly raised on the permit fees and attorney fees, that would have yet left $38,144 undisputed ($59,977 minus $5,333 minus $16,500 equals $38,144). Recall that the surety's limit of liability is $30,000.

That brings the analysis to the matter of increased loan fees and related items. In this portion of Mr. Wyatt's declaration in which he discussed this subject matter, he plainly states that his information is based upon information and belief, "based on conversations with loan officers." Under specific provisions of section 1058a of the Code of Civil Procedure the declarations, in order to be considered by the court, must comply with section 437c standards. It is well settled that declarations based on information and belief do not pass muster in connection with summary judgment motions. Neither do they here, and so the result of our analysis is to observe that no less than $38,144 of real parties' claim for damages remains undisputed by competent filings in opposition. The motion was therefore properly granted even though ostensibly for the wrong reasons.

DISPOSITION

The judgment is affirmed.

Kaufman, Acting P. J., and Morris, J., concurred.

A petition for a rehearing was denied November 18, 1981, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied December 30, 1981.