[Civ. No. 4118. Fifth Dist. Apr. 25, 1980.]

L. GAIL MAXWELL et al., Plaintiffs and Appellants, v. HAROLD COLBURN, Defendant and Respondent.

COUNSEL

Medearis & Grimm, John V. Grienauer and Robert Kropp, Jr., for Plaintiffs and Appellants.

Kosmo & Walsh and Henry J. Walsh for Defendant and Respondent.

OPINION

**FRANSON, Acting P. J.—**

### STATEMENT OF THE CASE

Appellants, the plaintiffs in a personal injury action, appeal from a judgment entered after the trial court granted respondent's motion for summary judgment. Appellants are a mother and daughter who were seriously injured when respondent's vehicle collided with them while they were walking across the street. They filed a complaint against respondent and other defendants alleging inter alia that their injuries were a proximate result of respondent's negligent operation of his motor vehicle.

Approximately two years after answering the third amended complaint, respondent filed a motion for summary judgment on the ground that there was no triable issue of fact because there was no evidence of any negligence on respondent's part. The motion was supported by a memorandum of points and authorities and by the declarations of respondent, his wife, and his attorney. Respondent also submitted copies of requests for admissions which were served on appellants pursuant to Code of Civil Procedure section 2033, and never answered.

Respondent recited the following matters in his declaration: On July 4, 1974, at about 11:10 p.m., respondent was driving his vehicle westbound on Morro Road past Atascadero State Park. He was travelling at a speed of approximately 35 miles per hour, which was 10 miles per hour below the posted speed limit. It was dark, but the road was illuminated to a "slight degree" by lights from a carnival taking place in the park. The headlights on respondent's vehicle were on. Respondent's wife Marie was riding in the front seat with him. Respondent was watching the roadway in front of the car.

As respondent was passing the park, he observed a woman and a young girl holding hands and standing in the center of the two-lane roadway. The woman was looking away from respondent's vehicle. The pedestrians first came into respondent's view when he was approximately 80 feet from them; they were silhouetted in the light of a vehicle approaching from the opposite direction. Respondent let up on the accelerator when he first saw the pedestrians in the roadway.

Respondent did not see the woman look his way after looking to the west, but thereafter she and the girl "abruptly" started into respondent's lane of traffic. As soon as respondent saw the pedestrians start into his lane, he applied his brakes hard enough to make the tires squeal. He called: "Oh my God!" because he did not think his brakes could stop him before the two people got safely across the street. Two or three seconds after respondent first saw the pedestrians, his car hit them. At that point his vehicle had slowed to between five and seven miles per hour.

According to respondent's declaration, he had ingested no alcoholic beverages or intoxicating substances on the day of the accident. He had taken some medication that day (one tablet each of Persantine and Digoxin), but felt no perceptible effects therefrom. He was not tired or drowsy at the time of the accident.

The declaration of respondent's wife Marie confirmed that she was riding with her husband at the time of the accident and that the car was travelling about 35 miles per hour before the accident. Mrs. Colburn declared that she had been resting with her head down; consequently, she did not have her eyes on the road or her husband immediately prior to the impact. As far as Mrs. Colburn knew, her husband had been paying attention to his driving at all times that she observed him during the ride.

The declaration of respondent's attorney, Michael Mercy, stated that he had served appellants with requests for admissions which remained unanswered and should accordingly be deemed admitted under Code of Civil Procedure section 2033.[1] The matters which respondent had requested appellants to admit included the following: that prior to the accident respondent had been driving 35 miles per hour with his headlights on; that there were no known witnesses to the accident except respondent, appellants, and one Julie Smith who did not see either respondent's vehicle or appellants prior to the actual impact; that appellants saw respondent's vehicle, but not respondent himself, prior to the impact; that there is no known witness who can testify based on personal knowledge that prior to the accident respondent's attention was in any way distracted from the roadway in front of his vehicle.

Appellants filed no papers in opposition to the summary judgment motion. At the hearing before Judge Woolpert, appellants' counsel argued that respondent's moving papers did not foreclose a triable issue of fact because respondent did not expressly state that he put his foot on the brake as soon as he saw appellants in the roadway. The court responded that respondent's declaration "could only be interpreted as showing no delay in applying the brakes, since [his] vehicle slowed from 35 m.p.h. to 5-7 m.p.h. inside of 80 feet within a period of 2-3 seconds." The settled statement reflects no other triable issues advanced by appellants' counsel at the hearing. Judge Woolpert concluded the summary judgment motion should be granted.

## DISCUSSION

██ We first dispose of respondent's contention that appellants have waived the right to argue certain inferences in their favor because the inferences were not argued to the trial court. Code of Civil Procedure section 437c, setting forth the procedure for summary judgment, provides in pertinent part: "Such motion shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to

---

[1]At the time relevant to this law suit, Code of Civil Procedure section 2033 provided that failure to respond to a request for admissions within the specified time would have the result that those matters would be deemed admitted. The statute now provides for such admissions by operation of law only if the request contains a notice of the consequences of failure to respond. Since this notice requirement was not in effect at the time relevant to this lawsuit, the matters within the request for admissions are deemed to be admitted by appellants' failure to respond as provided in the statute.

any material fact *the court shall consider all of the admissible evidence set forth in the papers and all inferences reasonably deducible from such evidence,* except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Italics added.) The statute requires the trial court to consider all inferences reasonably deducible from the evidence; hence, the fact that appellants' attorney did not urge the trial court at the original hearing on the motion to draw certain specific inferences of negligence does not relieve the trial court or this court from a duty to take those inferences into account. This accords with the well settled rule that a summary judgment must be reviewed on the basis of the papers filed at the time the court considers the motion. (See *Wiler* v. *Firestone Tire & Rubber Co.* (1979) 95 Cal.App.3d 621, 627 [157 Cal. Rptr. 248]; *Jacobs* v. *Retail Clerks Union, Local 1222* (1975) 49 Cal. App.3d 959, 966 [123 Cal.Rptr. 309].)

■ While the question is indeed close, we hold the trial court erred in granting the summary judgment because reasonable inferences of respondent's negligence can be drawn from respondent's declarations. A rational inference of negligence arises under the particular circumstances of this case from the fact that respondent was unable to stop his vehicle in time to avoid hitting appellants. There is a common law doctrine requiring a motorist to maintain such a speed that he will be able to stop within the assured clear distance ahead; this doctrine is sometimes referred to as the "radius of lights" doctrine (see generally, Annot., Application of "Assured Clear Distance Ahead" or "Radius of Lights" Doctrine to Accident Involving Pedestrian Crossing Street or Highway (1953) 31 A.L.R.2d 1424). This doctrine has been explained as follows: "...The motorist is charged with the duty of controlling the speed of his vehicle and of proceeding in accordance with existing conditions of visibility. Thus, while it may not be negligence to drive at a certain speed during the daylight hours on the open highway, driving at the same rate of speed at night or when the visibility is otherwise impaired may constitute negligence, proof of which may follow from the circumstances of the accident and the fact that the motorist was unable to stop before hitting the pedestrian." (*Id.,* at p. 1427.)[2]

---

[2]In *Burgesser* v. *Bullock's* (1923) 190 Cal. 673, 679 [214 P. 649], our Supreme Court noted that in some jurisdictions it is negligence as a matter of law for a motorist to operate his vehicle at night at such a speed that he cannot stop in time to avoid an object or person within the area illuminated by headlights. While the court declined to adopt the rule that this constitutes negligence as a matter of law, it did observe that the

A factual question exists as to whether respondent was negligent in failing to drive at a speed that would enable him to stop in time to avoid the collision or whether he was excused because appellants suddenly stepped in front of him. Whether respondent should have applied his brakes immediately upon observing appellants in the center of the road rather than waiting until they walked in front of his car would be for the jury. Although respondent may be able to prove at trial that he was free of negligence, in deciding the summary judgment motion the trial court was required to resolve all doubts in appellants' favor. (*Wiler v. Firestone Tire & Rubber Co., supra*, 95 Cal.App.3d at pp. 626-627.)

■ Respondent's compliance with the posted speed law does not negate his negligence as a matter of law. California's basic speed law provides, "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property." (Veh. Code, § 22350.)

As cogently noted by Schwartz in his treatise on comparative negligence: "Courts are very reluctant to uphold a summary judgment in comparative negligence cases." (Schwartz, Comparative Negligence (1974) § 17.3, pp. 280-281.) Ordinarily, issues of negligence are jury questions and the court may rarely decide comparative negligence questions without submitting them to the jury. (*Ibid.*) In short, negligence is a question of fact if different conclusions can be rationally drawn from the evidence. This is such a case.

The judgment is reversed.

Hopper, J., and Zenovich, J., concurred.

---

question of negligence of the defendants in such a case was for the jury to determine. (*Id.*, at pp. 680-681; see also *Casey v. Gritsch* (1934) 1 Cal.App.2d 206, 213-214 [36 P.2d 696].)